*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-043

OCTOBER TERM, 2014

| | |
|---|---|
| Jesse deVos | } APPEALED FROM: |
| | } |
| | } Superior Court, Addison Unit, |
| v. | } Family Division |
| | } |
| | } |
| Kimberly Volk | } DOCKET NO. 133-7-13 Andm |

Trial Judge: Linda Levitt

In the above-entitled cause, the Clerk will enter:

Father appeals from an order of the superior court, family division, modifying parental rights and responsibilities and parent-child contact for the parties' minor children. Father contends the trial court erred in issuing a decision before the close of evidence and the admission of additional evidence essential to a proper adjudication. We affirm.

The material facts may be summarized as follows. The parties are the unmarried parents of two children, ages seven and sixteen months at the time of the hearing in this matter.[*] The parties began their relationship in 2002 in Oregon. Shortly before the birth or their first child in 2006, father moved back to Vermont, his home state, where he remained for a year. Thereafter, father went back and forth between Oregon and Vermont before finally returning to Oregon in 2008, where he rented an apartment on his own. The trial court found that mother was the primary care provider for the child both during this period and thereafter, except for a period of nine months when she attended nursing school.

In 2009, the parties stipulated to an Oregon parentage order awarding mother sole parental rights and responsibilities while providing for equal parent-child contact. The trial court here found that mother remained the primary care provider. The parties eventually resumed living together and, in 2011, moved to Cornwall, Vermont. Father worked as an arborist in his father's business, while mother primarily cared for their child and worked part-time as a nurse until the birth of the parties' second child in 2012.

Father thereafter opposed mother's desire to return to work. Mother began to feel increasingly isolated and clashed with father over child care-issues relating to the oldest child, who exhibited behavioral problems at school and home. The child was ultimately diagnosed with ADHD, and his behaviors improved with medication and therapy.

---

[*] At the oral argument in this matter, counsel for the parties submitted a stipulation to the Court stating that the parties' younger child had died following the trial court proceeding.

In 2013, mother moved with the children back to Oregon. Father, in response, moved to enforce and modify the custody provisions of the Oregon order with regard to the older child and to establish parental rights with respect to the younger child. In August 2013, the trial court issued a ruling determining that Vermont had jurisdiction over the matter.

Thereafter, the court held a hearing on father's motion over three days, on October 9, December 23, 2013, and December 27, 2013. Almost the entire first day and most of the second day of the hearing consisted of father's case. He called eight witnesses, including the older child's therapist, consulting psychiatrist, first grade teacher and wrestling coach, and also testified extensively in his own behalf. Father rested his case at the end of the second day. The court then informed the parties that she would need to end the third and last scheduled day of the hearing, December 27, 2013, at 3:30 p.m.

Mother was the final witness on the third day. During father's cross-examination, the court informed the parties that they would need to end a little earlier, at 2:15 p.m. Father's attorney indicated that she had only a couple of additional questions, and proceeded to complete the cross-examination. Mother then testified briefly on re-direct, and the court indicated that the hearing would need to end, stating: "And if you need more time, we could have telephone testimony. Otherwise, we're going to conclude." Mother's attorney noted that the parties had originally understood the hearing would conclude at 3:30 p.m, but did not indicate that she had any other evidence to submit.

Father's attorney made no objection to ending early and did not indicate that she had any other questions for mother or rebuttal witnesses to call. Nor did counsel respond then or thereafter to the court's invitation to submit additional evidence by telephone. Before concluding, the court again told the parties to "let me know if you want some telephone testimony, be happy to do it," and ordered that "[o]therwise, [the] evidence is closed."

Almost two weeks later, the court issued its written ruling. In determining the children's best interests, the court reviewed each of the statutory factors in light of the evidence, finding that the children have a close and loving relationship with both parents, but perhaps slightly closer to mother by virtue of the greater time spent with her; that both parents were able to meet the children's material needs, although mother was more open to the advice of experts in dealing with the older child and therefore was better able to meet his developmental needs; that mother had been and remained the primary parent for the children; and that the children have close relationships with both sets of grandparents. On balance, the court concluded that awarding mother parental rights and responsibilities was in the children's best interests, and directed the parties to submit a proposed visitation schedule for father to include at least six out of ten weeks of the summer and two out of three school breaks. This appeal by father followed.

Father's claims on appeal focus on the end of the evidentiary hearing, when the court indicated that it would need to conclude by 2:15 p.m., informed the parties that they could submit additional evidence by telephone, and otherwise ordered the case closed. Father contends that, by January 8, 2014, when the court issued its decision, his attorney had determined that she wished to present rebuttal evidence but was precluded from doing so. Father contends that it was error to issue a decision before the close of evidence, and that he was deprived of his opportunity to be fully heard, in violation of his right to due process.

The record does not support the contentions. As noted, the court expressly ordered the evidence closed, while preserving the opportunity for either party to submit additional evidence if they wished. Neither party objected to the procedure or indicated that they had anything further to submit at that time, and neither contacted the court thereafter to indicate a desire to submit additional evidence. Although father asserts that his attorney had decided to submit rebuttal evidence when the court issued its decision two weeks later, and that such additional evidence would have played an essential role in the court's ruling, father does not identify the evidence in question or show how it would have conceivably altered the result. See Follo v. Florindo, 2009 VT 11, ¶ 19, 185 Vt. 390 (noting that we will not reverse trial court's evidentiary rulings absent showing of "abuse of discretion [that] resulted in prejudice to [a party's] substantial rights" (quotation omitted)); R.E. Bean Constr. Co. v. Middlebury Assocs., 142 Vt. 1, 7-8 (1982) (noting that claim that court erred in excluding rebuttal evidence requires record showing offer of proof of evidence or witnesses to be called). Moreover, the record here strongly belies any claim of unfairness. Father was afforded almost two full days of the evidentiary hearing to submit his case, called numerous witnesses, and engaged in extensive cross-examination of mother's witnesses. All of the evidence was carefully considered by the trial court in rendering its findings, which in turn support its conclusions. Accordingly, we discern no basis to disturb the judgment.

Affirmed.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
John A. Dooley, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice